**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**(AUSTIN DIVISION)**

| | | |
|---|---|---|
| GLENN ADAIR, Derivatively and on Behalf of Nominal Defendant Motive, Inc., | : | Case No. A-06-CA-017-LY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT L. HARMON, PAUL M. BAKER, VIRGINIA GAMBALE, MICHAEL J. MAPLES, SR., TOM MEREDITH, DAVID SIKORA, HARVEY WHITE, ERIC L. JONES, MICHAEL LaVIGNA and JOHN D. THORNTON, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| MOTIVE, INC., | : | |
| | : | |
| Nominal Defendant. | : | |

**PLAINTIFF GLENN ADAIR'S UNOPPOSED MOTION WITH MEMORANDUM**
**OF LAW FOR APPROVAL OF SETTLEMENT OF DERIVATIVE**
**ACTION, IN SUPPORT OF AN AWARD OF ATTORNEY'S FEES AND**
**REIMBURSEMENT OF EXPENSES AND AN INCENTIVE AWARD**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT                                                                    1

II.   INTRODUCTION AND BACKGROUND                                                 2

III.  COURSE OF THE LITIGATION                                                           3

IV.   DERIVATIVE SETTLEMENT                                                                5

V.    ARGUMENT                                                                                          9

      A.   The Proposed Settlement Is Fair, Reasonable,
          And Adequate and Should Be Approved By The Court                    9

             1.   General Principles Concerning Factors To Be Considered
                By The Court In Deciding To Approve A Settlement                9

             2.   The Settlement Achieved In This Case Is Fair,
                Reasonable And Adequate                                                     12

      B.   Attorneys' Fees Should Be Awarded To Plaintiff's Counsel          15

      C.   Lead Plaintiff Should Receive an Incentive Award                      20

VI.   CONCLUSION                                                                                      22

# TABLE OF AUTHORITIES

**Page**

*Airline Stewards and Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.,*
630 F.2d 1164 (7th Cir. 1980)                                                                9

*Armstrong v. Board of School Directors,*
616 F.2d 305 (7th Cir. 1980)                                                                 9

*Barton v. Drummond Co.,*
636 F.2d 978 (5th Cir. 1981)                                                                17

*Brown v. RJR Nabisco, Inc.,*
[1992 Transfer Binder]
Fed.Sec.L.Rep. (CCH) ¶ 96,984 at 94, 267 (S.D.N.Y. 1992)                                    13

*Bryan v. Pittsburgh Plate Class Co.,*
494 F.2d 799 (3rd Cir. 1974)                                                                11

*Bullock v. Administrator of the Estate of Kircher,*
84 F.R.D. 1 (D.H.J. 1979)                                                                   11

*Burger v. CPC Internation'l Inc.,*
76 F.R.D. 183 (S.D.N.Y. 1977)                                                               13

*Camp v. Progressive Corp.*
2004 WL 2149079, at *8 (E.D.La. Sept. 23, 2004                                           21, 22

*City of Detroit v. Grinnell Corp.,*
495 F.2nd 448 (2nd Cir. 1974)                                                            12, 13

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977)                                                            12, 13

*DeHoyos v. Allstate Corp.*
240 F.R.D. 269 & 340 (W.D. Tex. 2007)                                                    20, 21

*DiGiacomo v. Plains All Am. Pipeline*
Nos. H-99-4137, H-99-4212, 2001 WL 34633373 at *10
(S.D. Fla. Dec. 19, 2001)                                                                   19

*Fisher Bros., Inc. v. Meuller Bros. Co.,*
630 F.Supp. 493 (E.D. Pa. 1985)                                                             13

*Florida Trailer & Equipment Co. v. Deal,*
284 F.2d 567 (5th Cir. 1960)                                                                 9

*Fountain v. Avondale Industries,*
1996 WL 190104 (E.D. La. 1996) at *1                                                        17

*Grunin v. Internat'l House of Pancakes,*
513 F.2d 114 (8th Cir. 1975)                                                             11, 13

*Hander v. San Jacinto Junior College,*
519 F.2d 273 (5th Cir. 1975)                                                                17

ii

**Page**

*In re Baldwin-United Corp.,*
    607 F.Supp. 1312 (S.D.N.Y. 1985)          12, 13

*In re Cendant Corp. Prides Litig.*
    51 F.Supp.2d 537 (D.N.J. 1999)          19

*In re Charer Comms. Inc., Sec. Litig.*
    4:02-cv-1186, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005)          18

*In re Granada Partnership Sec. Litig.*
    803 F.Supp. 1236 (S.D.Tex. 1992)          22

*In re Gulf Oil/Cities Service Tender Offer Litigation,*
    [1992 Transfer Binder]
    Fed.Sec.L.Rep. (CCH) ¶ 96, 845 (S.D.N.Y. 1992)          11

*In re Heritage Bond Litig.,*
    Nos. 02-1475, 01-3752, 02-382, 02-993, 02-2745, 02-6484, 02-6841, 02-
    02-9221, 02-6512, 2005 WL 1594403, at *3-4 (C.D.Cal. June 10, 2005)          22

*In re Lease Oil Antitrust Litigation (No. II)*
    186 F.R.D. 403, 449 (S.D.Tex. 1999)          21

*In re NASDAQ Market-Makers Antitrust Litig.*
    187 F.R.D. 495 (S.D.N.Y. 1998)          19

*In re Rite Aid Corp. Sec. Litig.*
    362 F.Supp.2d 587 (E.D. Pa. 2005)          18

*In re Sumitomo Cooper Litig.*
    74 F.Supp.2d 393 (S.D.N.Y. 1999)          19

*In re Terra-Drill Partnerships Securities Litigation,*
    733 F.Supp. 1127 (S.D. Tex 1990)          19

*In re Warner Communications Securities Litigation,*
    618 F.Supp. 735 (S.D.N.Y. 1985)          13, 20

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*
    364 F.Supp.2d 980 (D.Minn. 2005)          19, 22

*Johnson v. Georgia Highway Express, Inc.*
    448 F.2d 714 (5th Cir. 1974)          18

*Jusephson v. Campbell,*
    [1967-68 Transfer Binder]
    Fed.Sec.L.Rep. (CCH) ¶ 92,347 (S.D.N.Y. 1969)          12

*Katz v. E.L.I. Computer Systems, Inc.,*
    [1970-71 Transfer Binder]
    Fed.Sec.L.Rep. (CCH) ¶ 92,994 (S.D.N.Y. 1971)          12

*Kusner v. First Pennsylvania Corp.,*
    74 F.R.D. 606 (E.D. Pa. 1977)          12

**Page**

*Lee v. Southern Home Sits Corp.,*
  444 F.2d 143 (5th Cir. 1971)                                                17

*Maher v. Zapata Corp.,*
  714 F.2d 436 (5th Cir. 1983)                          10, 11, 13, 14, 15, 17

*McNary v. American Savings & Loan Ass'n,*
  76 F.R.D. 644 (N.D. Tex. 1977)                                              9

*Miller v. Republic Nat'l Life Ins. Co.,*
  559 F.2d 426 (5th Cir. 1997)                                               9

*Mills v. Electric Auto-Lite Co.,*
  396 U.S. 375 (1970)                                                    17, 16

*Patterson v. Stovall,*
  528 F.2d 108 (7th Cir. 1976)                                              11

*Pearson v. Ecological Science Corp.,*
  522 F.2d 171 (5th Cir. 1975)                                             10

*Prudential-Bache Securities, Inc. v. Matthews,*
  627 F.Supp. 622 (S.D. Tex. 1986)                                         17

*Purdie v. Ace Cash Express, Inc.*
  2003 WL 22976611 (N.D. Tex. December 11, 2003)                           21

*Roberts v. Texaco, Inc.*
  979 F.Supp. 185 (S.D.N.Y. 1997)                                          19

*See also Hicks v. Stanley*
  No. 01-10071, 2005 WL 2757792, at *10-11 (S.D.N.Y. Oct.24, 2005)         22

*Strong v. Bellsouth*
  137 F.3d 844 (5th Cir. 1998)                                             18

*Wallace v. House,*
  377 F.Supp. 1192 (W.D. La. 1974)                                         17

*West Virginia v. Chas. Pfizer & Co.,*
  314 F.Supp. 701 (S.D.N.Y.), aff'd, 440 F.2d 1079 (2nd Cir. 1971)         12

*Williams v. First Nat'l Bank of Pauls Valley,*
  216 U.S. 582 (1910)                                                      9

*Witter v. Ghen*
  [1969-70 Transfer Binder]
  Fed.Sec.L.Rep. (CCH) ¶ 92,602 (S.D.N.Y. 1969)                           12

*Young v. Katz,*
  447 F.2d 431 (5th Cir. 1971)                                          10, 13

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
     Rule 23.1                                                3

**SECONDARY AUTHORITIES**

7C *Wright & Miller Federal Practice and Procedure*
     (2d ed. 1986) §1841                       16, 20

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**(AUSTIN DIVISION)**

| | | |
|---|---|---|
| GLENN ADAIR, Derivatively and on Behalf of Nominal Defendant Motive, Inc., | : | Case No. A-06-CA-017-LY |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT L. HARMON, PAUL M. BAKER, VIRGINIA GAMBALE, MICHAEL J. MAPLES, SR., TOM MEREDITH, DAVID SIKORA, HARVEY WHITE, ERIC L. JONES, MICHAEL LaVIGNA and JOHN D. THORNTON, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| MOTIVE, INC., | : | |
| | : | |
| Nominal Defendant. | : | |

**PLAINTIFF GLENN ADAIR'S UNOPPOSED MOTION WITH MEMORANDUM OF LAW FOR APPROVAL OF SETTLEMENT OF DERIVATIVE ACTION, IN SUPPORT OF AN AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES AND AN INCENTIVE AWARD**

**I.      PRELIMINARY STATEMENT**

Plaintiff, Glenn Adair ("Adair" or "Derivative Plaintiff") by his undersigned counsel, respectfully submits this unopposed Motion with Memorandum of Law for Approval of the Settlement of This Derivative Action, Award of Attorneys' Fees and Reimbursement of Expenses and an Incentive Award.  The Order of Final Judgment and Dismissal was incorporated into the Stipulation of Settlement as Exhibit A and filed with the Court on January 24, 2008 and included herein.

1

## II.    INTRODUCTION AND BACKGROUND

The procedural history of the present and related litigation is complex. The complaint in this shareholders derivative action, captioned *Glenn Adair v. Scott L. Harmon, et al.*, United States District Court for the Western District of Texas, Austin Division, Case No. A06CA017LY was filed on January 9, 2006.   Greater detail is set forth in the Stipulation of Settlement ("Stipulation") previously filed with this Court on January 24, 2008. A separate action was filed and maintained against Motive, Inc., ("Motive" or the "Company") and its officers and directors, relating to alleged inflating of projected revenues which resulted in a loss of shareholder value, namely, *In Re: Motive, Inc. Securities Litigation*, United States District Court for the Western District of Texas, Austin Division, Case No.: A05CA923LY.   ("Shareholder Action").   Derivative Plaintiff filed an action ("Derivative Action") derivatively on behalf of Motive against Scott L. Harmon, Paul M. Baker, Virginia Gambale, Michael J. Maples, Sr., Tom Meredith, David Sikora, Harvey White, Eric L. Jones, Michael LaVigna and John D. Thornton ("Settling Defendants"), each being a current or former officer and/or director of Motive as set forth in detail in the derivative complaint. Derivative Plaintiff's claims arise out of alleged breaches of fiduciary duty by the Settling Individual Defendants during the period June 25, 2004 through the present.   Derivative Plaintiff claims that, during the relevant period, Motive projected inflated revenues, provided guidance which was false or misleading; and did not disclose that there was a decline in demand for the Company's management automation software. As a result of this alleged conduct, Derivative Plaintiff claims that the Settling Individual Defendants breached their fiduciary duties to Motive.

In conjunction with the settlement of the Shareholder Action alleging violations of the Securities Exchange Act of 1934, Derivative Plaintiff and Settling Defendants have resolved this matter and Derivative Plaintiff hereby files this Unopposed Motion for the

Court's approval of the Settlement ("Settlement") pursuant to the requirements of Rule 23.1 of the Federal Rules of Civil Procedure.[1]

As part of the settlement of this action, Derivative Plaintiff's counsel ("Derivative Counsel") are hereby applying to the Court for an award of attorneys' fees and expenses ("Derivative Action Fees and Expenses") for the significant benefits conferred upon the Company and its shareholders as the result of the derivative action.[2]

Through their efforts in prosecuting this litigation, Derivative Counsel obtained the implementation of significant corporate governance reforms at the Company.  As set forth more particularly herein, since the commencement of the Derivative action, and as a result of the efforts of Derivative Plaintiff and his counsel in protracted, arms-length settlement negotiations, the Company has instituted and agreed to maintain corporate governance initiatives which will be of decidedly significant value to the Company.  Derivative Counsel seek and are entitled to an award of reasonable attorneys' fees and costs in the amount negotiated with the Settling Defendants and preliminarily approved by this Court.

## III.   COURSE OF THE LITIGATION

As noted above, the Derivative Complaint was filed on January 9, 2006. Shortly thereafter, the parties agreed to stay the litigation pending the outcome of the Motion to Dismiss in the Shareholder Action.

Derivative counsel conducted an investigation of the allegations of the Class Action Complaint as well as of other aspects of defendants' conduct.  From that investigation, derivative counsel was able to form a realistic assessment of the strengths and weaknesses of the derivative case. It was recognized that plaintiff's derivative case

---

[1]Fed. R. Civ. P. 23.1 provides in the relevant part that "[t]he derivative action shall not be dismissed or compromised without the approval of the court . . ."

[2]The amount requested is intended to satisfy Derivative Counsels' reimbursement of out-of-pocket expenses and costs incurred in the prosecution of the litigation, as well as attorneys' fees.

possessed certain weaknesses that might have been difficult to overcome if this lawsuit was ultimately tried by a jury. For example, if the class plaintiffs in the Shareholder Action were ultimately found to be unable to prove their claims for violation of the federal securities laws, it would be significantly more difficult for Derivative Plaintiff to convince the trier of fact that Settling Defendants had breached any duties owed to Motive. Similarly, Settling Defendants could plausibly assert at trial that they had done the best they could to manage the Company in a responsible manner, but they were overtaken by events and circumstances not of their own making.

Moreover, it was recognized that plaintiff's derivative case had problems surviving a motion to dismiss the lawsuit for failure to make demand on the Board of Directors. Derivative Plaintiff did not make a pre-litigation demand for action on the Board of Directors as is often required and though the complaint plead an excuse from the demand requirement, this issue is always fiercely litigated in derivative cases and there is no question it would have been here.[3] Derivative Counsel is certain the attorneys representing Settling Defendants would have filed a motion to dismiss for failure to make a pre-litigation demand on the Board of Directors. Hence, Derivative Counsel faced the substantial risk that this case would be dismissed, thereby recovering nothing for the company.

On December 6, 2007 after substantial arms-length negotiations between counsel, the parties jointly entered into a Stipulation of Settlement which was filed with the Court on January 24, 2008. On March 6, 2008, the Court entered a Preliminary Order. The Preliminary Order in connection with settlement proceedings: (a) preliminarily approved the

---

[3]Derivative Counsel did not make a pre-litigation demand on the Board of Directors due to the position that such demand would be futile.

4

proposed derivative settlement for the purpose of sending notice thereof to all individuals and entities who hold the common stock of Motive and (b) scheduled a hearing for July 1, 2008 to determine whether the proposed derivative settlement is fair and reasonable and to consider the award of attorney's fees and reimbursement of out-of-pocket expenses to Derivative Counsel.

## IV.   DERIVATIVE SETTLEMENT

The settlement consideration of the Derivative Action consists of significant corporate governance changes, which are set forth in Paragraph 6 of the Stipulation Settlement.   These "corporate therapeutics" consist of a series of legally binding, enforceable undertakings by the Company to revise and tighten its governance and corporate structure.   After the initiation of this Derivative Action, Motive implemented a number of corporate governance changes. The Settling Individual Defendants and Motive acknowledge that some of these corporate governance changes and control improvements address issues that were raised in this Derivative Action and further acknowledge that the changes and control improvements were made in the context of the litigation of this Derivative Action, which were a positive factor in their adoption.   In full and final settlement of this Derivative Action, the Settling Parties agree that the Board of Directors of Motive have agreed to the following:

(a)   The Company has taken corrective action with respect to certain Company personnel.

(1)   The Company has taken corrective action regarding the Company's former CEO and former CFO.  On January 20, 2006, the Company's Board of Directors asked the former CFO for his immediate resignation and he immediately tendered his resignation from all positions within the Company.  Simultaneously, the Company's Board of Directors directed the former CEO to immediately disassociate himself from any involvement in (i) the preparation and analysis of the Company's books and records, (ii)

the Company's financial reporting, and (iii) actions related to the Company's pending restatement.  On February 20, 2007, the former CEO resigned from all positions with the Company.

(2)     The Company replaced the former CEO and former CFO with seasoned executives of impeccable reputations, substantive track records of business success and demonstrated commitments to ethics and integrity.

(3)     The Company has strengthened its finance and accounting department by hiring a new Assistant Controller, a new Corporate Controller, a Revenue Accountant, and an SEC Reporting Manager.

(b)     The Company has taken action to strengthen its accounting controls, procedures and training.

(1)     The Company no longer recognizes revenue on the Company's bundled or multiple-element software arrangements as if VSOE of fair value for the maintenance element exists, but instead recognizes all revenue for such arrangements ratably over the duration of the arrangement, assuming all other revenue recognition criteria are met.

(2)     The Company's revenue recognition policy has been revised so that the Company will only record revenue for its reseller transactions upon cash collection, assuming all other revenue recognition criteria are met.

(3)     The Company's revenue recognition policy has been revised so that in transactions where the quantity of licenses to be sold under an agreement is not fixed and determinable, the Company will only recognize revenue associated with prepayments under such agreement as the related licenses are sold, assuming all other revenue recognition criteria are met.

(4)     The Company has communicated at all levels the importance of integrity in accounting judgments and of accurate data gathering and documentation to support accounting judgments.

(5)     The Company has adopted new accounting procedures with respect to revenue recognition so that all policies and procedures are clearly explained and consistently applied, and provided necessary training regarding the same.

(6)     The Company has established a program of regular training seminars for accounting and financial personnel provided in-house and by third parties.

(7)    The Company has established a process for coordinated oversight of the Company's revenue recognition procedures by the Company's outsourced internal audit professionals and by the Company's outside auditors.

(8)    The Company has adopted new control procedures with respect to material accounts so that all accounting policies and procedures are consistently applied, and provide necessary training regarding the same.

(c)    The Company has investigated certain issues in connection with the Company's acquisition of BroadJump, Inc. and taken appropriate action to ensure that the appropriate accounting treatment is accorded to the BroadJump transaction.

(d)    The Company has improved the effectiveness of the Company's internal audit function.

(1)    The Company has engaged an outside audit firm to perform the Company's internal audit function on an outsourced basis.

(2)    The Company has strengthened its procedures to ensure that departments, locations and individuals implement procedures that address issues or problems identified in the findings of the Company's internal audit professionals and to ensure that the internal audit professionals promptly follow-up on identified issues or problems to confirm that such issues or problems have been appropriately resolved.

(3)    The Company will continue to evaluate the effectiveness of the Company's outsourced internal audit professionals.

(e)    The Company has taken steps to strengthen the Company's Code of Business Conduct and Ethics and procedures for monitoring compliance therewith.

(1)    The Company has adopted a revised code of conduct reinforcing the Company's commitment to its culture of honesty and integrity and established a procedure for written confirmation of compliance with the Company's revised code of conduct on an annual basis for all employees.

(2)    The Company has provided training for the Company's employees regarding the Company's Code of Business Conduct and Ethics, and related ethics and compliance training.

(f)    The Company will continue to place additional emphasis on the Company's culture of honesty and integrity.

7

(g)     Motive's Corporate Governance and Nominating Committee will be chaired by an outside independent director.  The Corporate Governance Committee will review Motive's corporate governance principles annually to ensure that the company principles continue to meet best practices.

(h)     The Company's independent auditor will not perform any consulting work for Motive other than tax consulting work unless specifically approved by the Audit Committee.

(i)     All of the monitoring of the independent auditors will be conducted by the Audit Committee of the Board of Directors.  Motive will use its best efforts to have each member of the audit committee be considered a financial expert determined by the Board pursuant to the NASDAQ standard.

(j)     The Company will create an office of Chief Ethics and compliance officer who is responsible for supporting the Board in its responsibility to evaluate, review and enhance the Company's corporate compliance program and ensuring senior leadership responsibility and accountability for compliance and ethical business conduct.  Jack Greenberg, General Counsel shall be the Chief Ethics and compliance officer who shall provide an annual report to the Board regarding the Company's programs.

(k)     The revised code of conduct and ethics will be published on Motive's website.

(l)     All employees shall acknowledge completion of educational programs in writing.

Taken together, these provisions comprise significant and beneficial changes in Motive's former manner of corporate governance. The installation and maintenance of these mechanisms constitute nonmonetary benefits to the Corporation in that they significantly strengthen its ability to govern itself and to avoid exactly the sort of problems that caused it to be sued for violations of the federal securities laws.

Finally, the settlement calls for payment of plaintiff's counsel fees and expenses from Motive in the amount of $107,500.00.

As will be demonstrated below, the proposed settlement should be approved.

## V.    ARGUMENT

### A.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

#### 1.    General Principles Concerning Factors To Be Considered By The Court In Deciding Whether To Approve A Settlement

It is well-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910).  Indeed, it is "the policy of the law generally to encourage settlements."  *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960); *McNary v. American Savings & Loan Ass'n*, 76 F.R.D. 644 (N.D. Tex. 1977).  This is particularly true in the case of derivative and class actions.  As the court stated in *Airline Stewards and Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164,(7th Cir. 1980):

> Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . This rule has particular force regarding class action lawsuits.[4]

*Id*. at 1166-67.

Thus, the courts of appeals have long recognized that "there is an overriding public interest in favor of settlement."  *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980).

The Fifth Circuit has repeatedly held that, as a result of their highly favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits."  *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d

---

[4] See also, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2nd Cir. 1986); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2nd Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Milstein v. Huck*, 600 F.Supp. 254, 262 (E.D.N.Y. 1984); *Speikermann v. Whittaker Corp.*, 529 F.Supp. 1, 5 (E.D.N.Y. 1978); *Jones v. Amalgamated Warbase Houses, Inc.*, 97 F.R.D. 355, 359 (E.D.N.Y. 1983); *Alliance to End Repression v. City of Chicago*, 561 F.Supp. 537, 548 (N.D. Ill. 1982); *Ross v. Saltmarsh*, 500 F.Supp. 935, 944 (S.D.N.Y. 1980).

426 (5th Cir. 1997); *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). Moreover, the Fifth Circuit has explicitly recognized that district courts are to be afforded broad discretion in determining whether to approve a proposed settlement of a shareholder's derivative action.  In *Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983), the Fifth Circuit Court of Appeals devoted considerable attention to addressing the factors involved in deciding whether to approve the settlement of such a lawsuit.

The Fifth Circuit Court of Appeals began its analysis in *Maher* by noting that the law especially favors the amicable resolution of derivative actions.   The Court stated, "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable'.  The courts, therefore, do not lightly reject such settlement."  *Id.* at 455.  The Court of Appeals set forth two touchstones that the settlement of a shareholder's derivative action must meet.  First, the district court must determine that "there has been no fraud or collusion in arriving at the settlement agreement."  Second, the district court must find that the settlement agreement is "fair, reasonable, and adequate."  *Id.* at 455, citing *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).  Significantly, the Court of Appeals cautioned that, in exercising the wide discretion allotted to it, the district court "should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Id.* at 433.[5]

Following the principles set forth in *Maher*, the district courts in this Circuit and elsewhere have taken a liberal approach towards approval of derivative settlements, recognizing that the settlement process involved the exercise of judgment and that the

---

[5]This discretion is conferred in recognition that "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice," and the trial court's ruling on the adequacy of a proposed compromise is given great deference. *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380, 1385 (S.D.N.Y. 1972). aff'd in part rev'd in part on other grounds, 495 F.2d 448 (2nd Cir. 1974).

concept of "reasonableness" can encompass a broad range of results.  Thus, in *Maher* the Court of Appeals recognized that "[p]arties to the settlement of a shareholders' derivative action are . . . permitted great freedom in shaping the form of the settlement consideration . . . Thus, a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."  *Id.* at 466.

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues that are intentionally left unresolved.  *See, e.g., Bryan v. Pittsburgh Plate Class Co.*, 494 F.2d 799, 804 (3rd Cir. 1974); *Bullock v. Administrator of the Estate of Kircher*, 84 F.R.D. 1, 4 (D.H.J. 1979).  *See also Grunin v. Internat'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975).

Settlements are constructed upon compromise, and compromise necessarily means that the merits of the parties' claims and defenses are left undecided.  "[A]ny virtue which may reside in a compromise is based upon doing away with the effect of such decisions." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976).  As one court stated:

> [The Court's] function in evaluating the merits of [a proposed settlement] is limited.
>
> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement.  Such procedure would emasculate the very purpose for which settlements are made.  The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable.

*In re Gulf Oil/Cities Service Tender Offer Litigation*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,845 at 93,389 (S.D.N.Y. 1992).

A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither chooses to risk taking to final resolution.  Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement.  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  *See also West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 701 (S.D.N.Y.), *aff'd*, 440 F.2d 1079, 1085-86 (2nd Cir. 1971); *City of Detroit v. Grinnell Corp.*, 495 F.2nd 448, 462 (2nd Cir. 1974); *Kusner v. First Pennsylvania Corp.*, 74 F.R.D. 606, 608 (E.D. Pa. 1977).

Indeed, there is a "strong initial presumption that the compromise is fair and reasonable" if such settlement is reached by experienced counsel after arms length negotiations.  *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,994 at 90,676 (S.D.N.Y. 1971); *Witter v. Ghen*, [1969-70 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,602 at 98,352 (S.D.N.Y. 1969); *Jusephson v. Campbell*, [1967-68 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,347 at 97,658 (S.D.N.Y. 1969).

## 2. The Settlement Achieved in this Case is Fair, Reasonable, and Adequate

The "initial presumption" of fairness and adequacy of a settlement applies with special force in the instant case, because the settlement was arrived at after intense arms-length settlement negotiations.  As the court stated in *In re Baldwin-United Corp.*, 607 F.Supp. 1312 (S.D.N.Y. 1985), a presumption in favor of a settlement arises once the proponents of the settlement demonstrate:

> [that] the settlement was reached as a result of arms-length negotiations, that the proponents are represented by counsel experienced in similar cases . . . and that the number of objectors of the relative size of their interests is small.

*Id.* at 1320; *see also, Brown v. RJR Nabisco, Inc*., [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,984 at 94,267 (S.D.N.Y. 1992) (". . . I should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel.")

Here, the proposed settlement of the derivative action is unquestionably the result of arms-length negotiations, reached after "intelligent evaluation of the lawsuit by the parties and their capable counsel." *Maher*, 714 F.2d at 457. There can be no doubt that the settlement of the Derivative Action was reached entirely without collusion of any kind.

The Fifth Circuit has recognized that a lack of shareholder objections is a factor that the district court should take into account when determining whether to approve a proposed derivative settlement. *Maher*, 714 F.2d at 456; *Cotton v. Hinton, supra*, 559 F.2d at 1331. Over 11,000 notices had been mailed to shareholders informing them of the proposed settlement of the derivative action. There have been no objections to the proposed settlement. Further, on March 28, 2008, *The Wall Street Journal* ran a Summary Notice of the settlement. This overwhelmingly favorable response is convincing evidence of the settlement's fairness and adequacy. *See, Fisher Bros., Inc. v. Meuller Bros. Co.*, 630 F.Supp. 493, 498 (E.D. Pa. 1985); *Grunin v. Internat'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1985); *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 462; *In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 740 (S.D.N.Y. 1985); *In re Baldwin-United Corp*., 607 F.Supp. 1312, 1320 (S.D.N.Y. 1985); *Burger v. CPC International Inc*., 76 F.R.D. 183, 186 (S.D.N.Y. 1977).

As explained above, to merit approval, a proposed settlement of a derivative action must be "fair, reasonable, and adequate." *Maher*, 714 F.2nd at 455; *Young v. Katz, supra*, at 433. Plaintiff submits that the proposed settlement of this derivative case meets these criteria. As outlined above, the components of the derivative settlement are nonpecuniary

13

in nature, and consist of substantive changes in the corporate governance of Motive. The law recognizes that a nonpecuniary settlement of a shareholder's derivative action may be equally "fair, reasonable, and adequate" as one that provides for the payment of monies to the company. In *Maher*, the Court took pains to emphasize that "[p]arties to the settlement of a shareholders' derivative action are . . . permitted great freedom in shaping the terms of the settlement consideration. *Id.* at 466. The fact that the form of the settlement decided upon is somewhat unusual in that it includes some benefits which cannot be evaluated in financial terms does not militate against its acceptance . . . *Id.* at 466. Thus, a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation. *Maher* at 466.

The proposed derivative settlement in the case at bar is nonpecuniary in nature. The structural and governance provisions set forth in Paragraph 6 of the Stipulation of Settlement, though unquantifiable in strictly monetary terms, confer real and substantial benefits on Motive. These benefits came about as the direct result of the institution, maintenance, and settlement of plaintiff's derivative action.

Thus, despite the fact that the value of the corporate governance provisions that Motive has adopted as a proximate result of this derivative action may be difficult to quantify in strictly monetary terms, it is clear that the provisions are of considerable value to the Company. They will, among other things, make it far more difficult for the Company or its insiders to violate the securities laws in the future. The proposed settlement thus confers a real and substantial benefit of a nonpecuniary fashion on Motive.

It is plain, moreover, that "one of the principal purposes of the settlement was to terminate the litigation to avoid any further legal expense to Settling Defendants and, of at least as great importance, to take its management 'out of the courtroom and restore them

full time to the corporate board room and business'." *Maher, supra*, at 467.  In *Maher*, the Court of Appeals fully endorsed the principle that the avoidance of further litigation expenses, coupled with the termination of "disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill," "are important and valid reasons for seeking a settlement, and may warrant its approval." *Id.* at 467.

Plaintiff submits this settlement to the Court only after carefully evaluating the chances of success on the principal issues presented in this action.  Short of an actual trial, it is extremely difficult to predict with confidence which side would prevail.

In light of the substantial benefits that will be realized by Motive as a result of this Settlement, Derivative Plaintiff and Derivative Counsel are of the firm opinion that the proposed Settlement is eminently fair, reasonable, and adequate, in the best interests of the Company, and worthy of the approval of this Court.  They reach this conclusion only after considering all relevant factors, including the evidence relating to class plaintiffs' prospects in the Shareholder Action for success or failure with respect to the substantive issues involved in the Class Action, and after balancing the magnitude of recovery obtainable, should Class Plaintiffs prevail, against the risks, expenses, and difficulties attendant upon the continued litigation of the action and, by extension, this derivative action.

For all of the reasons stated above, Derivative Plaintiff respectfully requests that the Court grant final approval of the proposed settlement of this shareholder's derivative action.

## B.   <u>ATTORNEYS' FEES SHOULD BE AWARDED TO PLAINTIFF'S COUNSEL</u>

This shareholder's derivative action was undertaken and prosecuted on a wholly contingent basis.  As compensation for their efforts on behalf of the Company, and in consideration for the benefits conferred upon Motive by the settlement of this action, Derivative Counsel respectfully requests that the Court approve an award of attorney's fees and expenses totaling $107,500.00, to be paid by Motive.

"It is well established that the shareholder-plaintiff in a derivative action is entitled to reimbursement by the corporation for the reasonable expenses of litigation, including counsel fees, when the successful prosecution of the suit has yielded a tangible benefit to the corporation." 7C *Wright & Miller Federal Practice and Procedure* (2d ed. 1986) §1841 at 201.  In some cases, the efforts of derivative counsel produce a monetary reward to the corporation.   However, counsel whose efforts vindicate a corporate right of action are entitled to an award of attorney's fees even in cases where a derivative action results in benefits to the corporation that are, as in the case at bar, nonpecuniary in nature.  Thus, in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), the Supreme Court stated:

> The fact that this suit has not yet produced, and may never produce, a monetary recovery from which [attorney's] fees could be paid does not preclude an award on this rationale.
>
> * * *
>
> [A]n increasing number of lower courts have acknowledged that a corporation may receive a "substantial benefit" from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature.
>
> * * *
>
> "Where an action by a stockholder results in a substantial benefit to a corporation he should recover his costs and expenses . . ."
>
> * * *
>
> In many suits . . . it may be impossible to assign monetary value to the benefit  .  .  .  Private stockholders' actions of this sort "involve corporate therapeutics," and furnish a benefit to all shareholders . . . To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefitted from them and that would have had to pay them had it brought the suit.

*Mills v. Electric Auto-Light Co., supra*, 396 U.S. at 392-97.

The Court of Appeals for the Fifth Circuit, and the district courts within the Fifth Circuit, have consistently applied *Mills* to award counsel fees in derivative cases that conferred tangible benefits upon the corporation on whose behalf the suit was brought. Thus, in *Maher, supra*, the Fifth Circuit Court of Appeals, emphasizing the mandatory nature of an award of attorney's fees in a situation where a derivative action had conferred nonpecuniary benefits upon the corporation on whose behalf it was instituted, stated:

> As to attorneys' fees . . . the district court . . . determined that "[t]his lawsuit was at least a contributing factor in several major beneficial changes in Zapata Corporation . . ." Because of these benefits, [derivative] plaintiff were <u>entitled</u> to reimbursement for attorneys' fees and costs.  The fact that Zapata did not receive a specific monetary recovery does not prevent an award of attorneys' fees. (emphasis in original)

*Id.*, at 436, 457-58 n.38.  *Accord, Barton v. Drummond Co.*, 636 F.2d 978, 983 (5th Cir. 1981) (Creation of "nonpecuniary benefits" entitles derivative plaintiff's counsel to fee award); *Hander v. San Jacinto Junior College*, 519 F.2d 273, 280-81 (5th Cir. 1975); *Lee v. Southern Home Sits Corp.*, 444 F.2d 143,144-45 (5th Cir. 1971); *Fountain v. Avondale Industries*, 1996 WL 190104 (E.D. La. 1996) at *1 (fees and costs awarded in derivative action that conferred purely nonmonetary benefit on corporation); *Prudential-Bache Securities, Inc. v. Matthews*, 627 F.Supp. 622, 625 (S.D. Tex. 1986) (law encourages award of attorney's fees and costs to successful plaintiffs in shareholder derivative actions, "it being unnecessary to show a pecuniary benefit to the corporation or fellow stockholders"); *Wallace v. House*, 377 F.Supp. 1192, 1203 (W.D. La. 1974) (fees awarded to derivative plaintiff because "the litigation benefitted the corporation being sued (by securing compliance with the law, even though the benefit might never be financial).")[6]

---

[6] Plaintiff notes that the Court of Appeals in *Maher v. Zapata Corp.* approved derivative fees of $250,000.00 (714 F.2d at 457-48 n.38).  By contrast, in the case at bar, plaintiffs seek only $107,500.00 in fees and expenses combined.

As set forth in the Felgoise Affidavit contained in the Appendix filed in conjunction with this Motion and Memorandum of Law, the total time expended by plaintiff's counsel in prosecuting this derivative action was 193 hours.  Valued at counsel's ordinary and customary billing rates approved by numerous courts throughout the country, this time would have a value of $91,675.00.  Awarding a fee and reimbursement of expenses in the amount of $107,500.00 would result in a multiplier of 1.15 after subtracting the expenses.

Federal courts often apply an enhancement or "multiplier" in order to adjust the lodestar figure of counsel in an award of attorneys' fees. The Court must evaluate for reasonableness under the lodestar method. *Strong v. Bellsouth*, 137 F. 3d 844 (5th Cir. 1998).  By applying an appropriate multiplier, the lodestar may then be adjusted either upward or downward after a review of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974).  The twelve *Johnson* factors are as follows: 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitation imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client and 12) awards in similar cases.  Plaintiff maintains that in applying all of the *Johnson* factors clearly counsel deserves a fee and reimbursement of expenses in the amount of $107,500.00. Again, counsel is merely requesting a fee resulting in a multiplier of 1.15.

Some examples of multipliers awarded by Courts in other cases are the following: *In re Charer Comms. Inc., Sec. Litig.,* 4:02-cv-1186, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (Court awarded a fee in which resulted in a multiplier of 5.61); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp.2d 587 (E.D. Pa. 2005) (Court approved a fee with a

multiplier of 6.96); *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp.2d 980 (D.Minn. 2005)(Court awarded a multiplier of 4.7); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) (Court approved a multiplier of 3.97 and held that multipliers of 3 to 4.5 are common); *In re Sumitomo Cooper Litig.*, 74 F. Supp.2d 393(S.D.N.Y. 1999)(Court awarded a multiplier of 4.0); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (Court awarded a multiplier of 5.28); *DiGiacomo v. Plains All Am. Pipeline*, Nos. H-99-4137, H-99-4212, 2001 WL 34633373 at *10 (S.D. Fla. Dec. 19, 2001)(Court awarded a multiplier of 5.3); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997)(Court approved a multiplier of 5.5).  Thus, the low multiplier requested of 1.15 confirms the reasonableness of the fees sought here.

The Notice disseminated by mail to Motive shareholders specifically informed them of the intention of plaintiff's counsel to apply to the Court for a combined award of attorney's fees and litigation expenses in the amount of $107,500.00.  No objections were filed to the settlement of this case.  The failure of even a single shareholder to voice an objection to the fee/reimbursement request strongly militates in favor of the requested amount.

In complex securities actions such as this, able counsel for plaintiffs can be retained only on a contingency basis.  A large segment of the investing public would be denied a remedy for breaches of fiduciary duty by officers and directors of public companies if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

Courts have widely recognized that adequate compensation for assuming the risks of such litigation is necessary to further the purposes of the federal securities laws.  Thus, in *In re Terra-Drill Partnerships Securities Litigation*, 733 F.Supp. 1127, 1129-30 (S.D. Tex.

1990), the court noted: "in order to attract competent counsel to represent the Class in protracted cases such as this one, courts look to award 'customary fees' to class counsel, *i.e.*, what class counsel would otherwise be able to receive from such services in the marketplace."[7] *See also In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 750-51 (S.D.N.Y. 1985) ("Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.")

Reimbursement of expenses to derivative counsel who create a benefit for the corporation is appropriate. As Wright and Miller explain, "In addition to court costs, a successful shareholder-plaintiff is entitled to all reasonable expenses . . . that were instrumental in securing the benefits for the corporation." 7C *Wright & Miller* §1841 at 207. As set forth in the Felgoise Affidavit located in the Appendix, filed in conjunction with this Motion, plaintiff's counsel expended $2,527.00 in out-of-pocket expenses in connection with the prosecution of this lawsuit on behalf of Motive. These expenses are summarized by category in the Affidavit submitted herewith. Plaintiff's counsel submit that these expenses were reasonable and necessarily incurred to achieve the results obtained here. Plaintiff's counsel is not seeking a separate award for reimbursement of their costs, however, but have agreed that the total sought - $107,500.00 - will cover expenses as well as fees.

## C.     LEAD PLAINTIFF SHOULD RECEIVE AN INCENTIVE AWARD

Lead Plaintiff Glenn Adair Should be Granted an Incentive Award. "Federal courts consistently approve incentive awards in class action lawsuits to compensate named Plaintiff for the services they provide and burdens they shoulder during litigation." *DeHoyos*

---

[7]As one court explained, "Derivative suits . . . require the initiative shareholders to commence the suit, and the probable level of compensation for attorneys as a practical matter directly affects the ability of shareholders to exercise such initiative. Thus, fee allowances in this area should be viewed as an incentive, as much as a just reward for services performed." *Milstein v. Werner*, 58 F.R.D. 544, 549 (S.D.N.Y. 1973).

*v. Allstate Corp.* 240 F.R.D. 269 (W.D. Tex. 2007) (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, at *8 (E.D.La. Sept. 23, 2004) (internal quotation omitted.)) In acting in its discretion, a court will generally examine the willingness of the named plaintiff or class representative to "devote their time and energy" to the action and whether the award is reasonable in light of the overall benefit to be conferred on the class. *DeHoyos*, 240 F.R.D. at 340.  Among the items a court will consider regarding the participation in the litigation is whether plaintiff met with Class Counsel from time to time to assist in the prosecution of the cases, responded to discovery, assisted in the investigation of Defendant, and evaluated various settlement proposals over the course of the negotiations.  *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D. Tex. December 11, 2003).  In this matter, Lead Plaintiff should be granted an incentive award.

Here, Lead Plaintiff Glenn Adair seeks an incentive award of $2,000.00.  There is no dispute that Mr. Adair actively participated in the litigation.  Indeed, he stepped forward in an effort to assist the company by bringing the action.  He has been and continues to be in contact with counsel regarding this action via numerous emails and telephone conferences from the original filing of the Complaint all the way through the settlement and these final approval papers.

Defendants also do not oppose the request for an incentive award.  Given the consideration provided to Motive coupled with Mr. Adair's invaluable participation, the proposed incentive award of $2,000.00 is reasonable.  The $2,000.00 incentive award to plaintiff Glenn Adair will be paid by plaintiff's counsel from the fee and expenses award approved by the Court.  *See Purdie v. Ace Cash Express, Inc.*, (N.D.Tex. Dec. 11, 2003) (awarding three named Plaintiff combined incentive award of $16,665); *In re Lease Oil Antitrust Litigation (No. II)*, 186 F.R.D. 403, 449 (S.D.Tex. 1999) (awarding named Plaintiff

up to $10,000 each for participating in lawsuit); *Camp v. Progressive Corp.*, 2004 WL 2149079, at *8 (E.D.La. Sept. 23, 2004) (awarding up to $10,000 to each named plaintiff as compensation for total payment of $102,000); *In re Granada Partnership Sec. Litig.*, 803 F.Supp. 1236 (S.D.Tex. 1992) (granting request for incentive award of $5,000 to representative class action Plaintiff). *See also Hicks v. Stanley,* No. 01-10071, 2005 WL 2757792, at *10-11 (S.D.N.Y. Oct.24, 2005); *In re Heritage Bond Litig.*, Nos. 02-1475, 01-3752, 02-382, 02-993, 02-2745, 02-6484, 02-6841, 02-02-9221, 02-6512, 2005 WL 1594403, at *3-4 (C.D.Cal. June 10, 2005) (approving incentive award); *In re Xcel Energy, Inc.*, 364 F.Supp.2d 980, 1000 (D.Minn.2005) (awarding incentive award to class representatives in PSLRA action).

## VI.   CONCLUSION

Based on the foregoing and on the entire record herein, Derivative Plaintiff and Derivative Counsel respectfully request that the Court approve the proposed Settlement of this Derivative Action as fair, reasonable, and adequate, that the Court award $107,500.00 as attorney's fees and reimbursed expenses to Derivative Counsel, to be paid by Motive, Inc. and that the Court award Derivative Plaintiff an incentive award in the amount of $2,000.00.

Respectfully submitted,

**OFFERMAN & KING, L.L.P.**

Date: <u>June 18, 2008</u>          By:   <u>/s/   JAMES W. KING</u>
                        James W. King, Esquire
                        6420 Wellington Place
                        Beaumont, TX  77706
                        Ph. (409) 860-9000
                        Fx. (409) 860-9199
                        jking@offermanking.com

**Liaison Counsel for Plaintiff, Glenn Adair**

and

Brian M. Felgoise, Esquire
Law Offices of Brian M. Felgoise, P.C.
261 Old York Road - P.O. Box 706
Jenkintown, PA 19046
Ph. (215) 886-1900
Fx. (215) 886-1909
FelgoiseLaw@verizon.net

**Lead Counsel for Plaintiff Glenn Adair**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he has in good faith conferred with the defendants in an effort to resolve this dispute without court action.  Defendants' counsel have indicated that they are unopposed to this Motion.

Respectfully submitted,

**OFFERMAN & KING, L.L.P.**

Date: <u>June 18, 2008</u>              By:    <u>/s/ JAMES W. KING                         </u>
                                            James W. King, Esquire
                                            6420 Wellington Place
                                            Beaumont, TX  77706
                                            Ph. (409) 860-9000
                                            Fx. (409) 860-9199
                                            jking@offermanking.com

                                            **Liaison Counsel for Plaintiff, Glenn Adair**

                                                    and

                                            Brian M. Felgoise, Esquire
                                            Law Offices of Brian M. Felgoise, P.C.
                                            261 Old York Road - P.O. Box 706
                                            Jenkintown, PA 19046
                                            Ph. (215) 886-1900
                                            Fx. (215) 886-1909
                                            FelgoiseLaw@verizon.net

                                            **Lead Counsel for Plaintiff Glenn Adair**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon the following counsel for parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States mail with sufficient postage thereon to carry the same to its destination.

### ATTORNEYS FOR DEFENDANTS

Rodney G. Strickland, Esquire
Keith Eggleton, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
Rstrickland@wsgr.com
Keggleton@wsgr.com

Clayton Basser-Wall, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX  78759
Telephone: (512) 338-5400
Facsimile: (512) 338-5499
cbasserwall@wsgr.com

*Attorneys for Defendants Virginia Gambale, Michael J. Maples, Sr., Tom Meredith, Dave Sikora, Harvey White, Eric L. Jones, Michael LaVigna, John D. Thornton and Nominal Defendant Motive, Inc.*

M. Scott Incerto, Esquire
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX  78701-2978
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
sincerto@fulbright.com

Harold F. Degenhardt, Esquire
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
hdegenhardt@fulbright.com

*Attorneys for Defendant Scott L. Harmon*


Michael J. Biles, Esquire
Paul R. Bessette, Esquire
Laura Moriaty, Esquire
Akin Gump Strauss Hauer & Feld, LLP
300 West 6th Street, Suite 2100
Austin, TX  78701-3911
Telephone: (512) 499-6200
Facsimile: (512) 499-6290
mbiles@AkinGump.com
pbessette@akingump.com
lmoriaty@akingump.com

*Attorneys for Defendant Paul M. Baker*



Date: June 18, 2008                              /s/   JAMES W. KING
                                            James W. King, Esquire